IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEZ HOLDING AG, SEZ AG, KURT
LANGEN, AND PHILIPP ENGESSER

                    Plaintiffs,

          v.

APPLIED MATERIALS, INC.,

                    Defendant.

C.A. No. 05-00552-SLR

**PROPOSED PRETRIAL ORDER**

In accordance with the Court's Scheduling Order of February 8, 2006 (D.I. 20) and Local Rule 16.4(d), counsel for plaintiffs submits the following proposed pretrial order signed by both parties:

1)    <u>**Statement of the nature of the action and the pleading in which the issues are raised**</u>

Plaintiffs seek correction of the named inventorship of United States Patent Nos. 6,708,701 ("the '701 patent") and 6,786,996 ("the '996 patent") under 35 U.S.C. § 256.  Plaintiffs also allege that the filing of the patents-in-suit constitute conversion and misappropriation of SEZ intellectual property and breach of a Joint Development Agreement ("the JDA") executed between the parties.

SEZ's Complaint (D.I. 1) included two counts:

    I.  Correction of inventorship of the '701 patent to name Kurt Langen and Philipp Engesser as the inventors and delete Ramin Emami as an inventor;

    II.  Conversion of the inventors' right to profit from their invention of the subject matter claimed in the '701 patent.

Claims relating to correction of inventorship and conversion of the '996 patent first arose in Applied's answer and counterclaim (D.I. 9) in the form of Applied's counterclaims for a declaratory judgment that: (a) SEZ is not entitled to an Order changing inventorship of the duly issued '996 patent; (b) SEZ is not entitled to ownership of the '996 patent; and (c) Applied has not converted from SEZ the subject matter set forth in the claims of the '996 patent.

In response to Applied's claims for declaratory judgment, SEZ asserted four counter-counterclaim counts (D.I. 12):

    I.  Correction of inventorship of the '996 patent to name Mr. Langen and Mr. Engesser as inventors and delete Mr. Emami as an inventor;

    II.  Conversion of the inventors' right to profit from their invention of the subject matter claimed in the '996 patent.

    III.  Breach of the parties' Joint Development Agreement, by filing patent applications claiming or based upon SEZ's Independent IP or Development IP;

    IV.  Misappropriation of SEZ confidential trade secret and other proprietary Independent IP and Developed IP by filing applications for the '701 and '996 patents.

SEZ moved the Court on October 23, 2006 for leave to file amended pleadings.  Applied has opposed the motion.  SEZ's proposed amendments are detailed in section 10 below.

**2)** <u>**Statutory Basis for federal jurisdiction and statement of supporting facts**</u>

This Court has subject matter jurisdiction over the claims, counterclaims, and counter-counterclaims and all relief requested in this action under 28 U.S.C. §§ 1331, 1338, 1367, 2201 and 2202. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

This action is for correction of inventorship of a United States patent under 35 U.S.C. § 256. This action also includes additional claims that arise from the same facts and circumstances that give rise to the 35 U.S.C. § 256 claim.

Defendant Applied Materials, Inc. is a Delaware corporation with its principal place of business in Santa Clara, California. Plaintiff SEZ Holding AG is a corporation organized under the laws of Switzerland with its principal place of business in Zurich, Switzerland. Plaintiff SEZ AG is a subsidiary of SEZ Holding AG and a corporation organized under the laws of Austria with its principal place of business located in Villach, Austria. Plaintiff Kurt Langen is a citizen of Germany residing in Villach, Austria and is an employee of SEZ AG. Plaintiff Philipp Engesser is a citizen of Germany residing in Lindau, Germany and is an independent contractor who works for SEZ AG.

**3)** <u>**Statement of facts which are admitted and require no proof**</u>

1.     SEZ, as assignee, caused to be filed on April 28, 1999 European Application No. 99108319.7 naming Kurt Langen as the sole inventor ("the Langen Application"). The Langen Application was published on November 15, 2000, as EP 1 052 682.

2.     On or about July 6, 2000 technical drawing CUK-150-03-06, embodied in Exhibit No. 27, was completed by SEZ personnel.

3.      On or about July 10, 2000 technical drawing CUK-150-03-EXB, Exhibit No. 28, was completed by SEZ personnel.

4.      On or about July 10, 2000 technical drawing CUK-150-03-00B, Exhibit No. 29, was completed by SEZ personnel.

5.      Technical drawing CUK-200-03-08A, Exhibit No. 25 was completed by SEZ personnel in 1999.

6.      Technical drawing CUK-200-03-05A, Exhibit No. 23 was completed by SEZ personnel in 1999.

7.      Technical drawing CUK-150-01-03B, Exhibit No. 26 was completed by SEZ personnel in 1999.

8.      Representatives of the parties met in or around mid-July 2000 in Santa Clara, CA.

9.      In early September 2000 representatives for the parties met in Santa Clara, CA.

10.     On or about September 29, 2000 SEZ personnel completed technical drawing Exhibit No. 30.

11.     In early October 2000 representatives from both parties met in Villach, Austria.

12.     SEZ, as assignee, caused to be filed on October 31, 2000, European Application No. 00123714.8 naming Philipp Engesser as the inventor ("the Engesser Application").  The Engesser Application was published on May 2, 2002, as EP 1 202 326.

13.     Applied and SEZ executed a Joint Development Agreement effective as of November 15, 2000 and running to April 30, 2001.  On or about April 29, 2001 SEZ executed an Addendum to the November 15, 2000 JDA whose terms stated that the effective period of the JDA would be extended to July 31, 2001.

14.     On or about November 16, 2000 SEZ personnel completed Technical drawing SGT-200-03-02, Exhibit No. 31.

15.     On or about December 4-14, 2000, Ramin Emami was in Villach, Austria at SEZ's laboratory.  At various times Harry Sax, Philipp Engesser, and Rainer Obweger, among others at SEZ, worked with Mr. Emami.

16.     The document set forth at AMAT 2580-642 includes notes taken by Mr. Emami during his trip to SEZ facilities in December of 2000.

17.     The document set forth at AMAT 5070-102 was completed by Mr. Emami after returning from his December 2000 trip to the SEZ facilities.

18.     In or around either late 2000 or early 2001 SEZ shipped a number of items to Applied's Santa Clara location concerning an edge bead removal tool.

19.     In or around early February 2001 Rainer Obweger from SEZ visited Applied's Santa Clara location.

20.     On or about February 15, 2001 SEZ personnel completed technical drawing SGT-200-03-00, Exhibit No. 32.

21.     From March 12, 2001 to March 23, 2001 Ramin Emami was at SEZ's lab in Villach, Austria.  At various times Harry Sax and Philipp Engesser among others worked with Mr. Emami during this trip.

22.     The Applied document set forth at AMAT 6149-88 was completed on or about March 28, 2001.

23.     On October 16, 2001, Applied, as assignee, caused to be filed patent application Nos. 09/981,589 and 09/978,865, naming Ramin Emami as the sole inventor. Those patent applications ultimately matured into the patents-in-suit.

24.    Throughout the joint development project, both parties disclosed confidential and proprietary information to each other.

25.    Applied has represented to SEZ through both its counsel and its Fed. R. Civ. P. 30(b)(6) witness at deposition upon oral testimony, that Applied is unaware of any edge bead removal tool utilizing a capillary ring that Applied has incorporated into a product for sale or delivery to any customer; nor is Applied aware of any agreement or plan to use an edge bead removal tool utilizing a capillary ring.

26.    Plaintiff SEZ Holding AG is a corporation organized under the laws of Switzerland with its principal place of business in Zurich, Switzerland.  Plaintiff SEZ AG is a subsidiary of SEZ Holding AG and a corporation organized under the laws of Austria with its principal place of business located in Villach, Austria.


4)    **Statement of issues of fact to be litigated**

A.    **SEZ's statement:**

**Whether or not the following facts are accurate:**

1.  Kurt Langen made inventive contributions to the subject matter claimed in the patents-in-suit including at least the following features:

a.  the use of a plurality of mounting posts positioned along a perimeter of a substrate support member;

b.  a rigid annular capillary ring mounted to the plurality of  mounting posts, the rigid annular capillary ring having a substantially planar capillary surface when attached to the mounting posts;

c.  the use of a hard plastic material for the capillary ring;

d.  the use of a plurality of mounting bores formed in the capillary ring, each being configured to communicate a mounting member therethrough;

e.  the use of a plurality of gripper bores formed in the capillary ring, each of these bores being configured to communicate a substrate gripper assembly therethrough;

f.  a capillary ring in a capillary-type edge bead removal system, comprising an annular body portion having a substantially planar capillary surface formed on an upper surface of the body portion, the body portion being manufactured from a rigid material, and the upper surface receiving a wafer prior to initiation of edge bead removal;

g.  the use of a plurality of radially positioned and equally spaced mounting bores formed in a capillary ring, each of these bores being configured to communicate a mounting screw therethrough to a mounting post;

h.  the use of at least three gripper bores formed in a capillary ring, each of the at least three gripper bores being configured to communicate a substrate gripper assembly therethrough from below the capillary ring;

i.  an apparatus for supporting a wafer during an edge bead removal process comprising a substrate support member, a plurality of mounting posts disposed on the substrate support member, a rigid ring mounted on the plurality of mounting posts for receiving the wafer and supporting the wafer above the substrate support member, and a plurality of support pins to raise the wafer above the ring.

    j.   at least three capillary ring support posts radially positioned about a perimeter of the upper substrate support surface;

    k.   an annular capillary ring rigidly mounted to the capillary ring support posts, the capillary ring having a planar upper surface.

2.   Philipp Engesser made inventive contributions to the subject matter claimed in the patents-in-suit including at least the following features:

    a.   the use of a plurality of mounting posts positioned along a perimeter of a substrate support member;

    b.   a rigid annular capillary ring mounted to the plurality of mounting posts, the rigid annular capillary ring having a substantially planar capillary surface when attached to the mounting posts;

    c.   the use of a hard plastic material for the capillary ring;

    d.   the use of a plurality of mounting bores formed in the capillary ring, each being configured to communicate a mounting member therethrough;

    e.   the use of a plurality of gripper bores formed in the capillary ring, each of these bores being configured to communicate a substrate gripper assembly therethrough;

    f.   a capillary ring in a capillary-type edge bead removal system, comprising an annular body portion having a substantially planar capillary surface formed on an upper surface of the body portion, the body portion being manufactured from a rigid material, and the upper surface receiving a wafer prior to initiation of edge bead removal;

g.  the use of a plurality of radially positioned and equally spaced mounting bores formed in a capillary ring, each of these bores being configured to communicate a mounting screw therethrough to a mounting post;

h.  the use of at least three gripper bores formed in a capillary ring, each of the at least three gripper bores being configured to communicate a substrate gripper assembly therethrough from below the capillary ring;

i.  an apparatus for supporting a wafer during an edge bead removal process comprising a substrate support member, a plurality of mounting posts disposed on the substrate support member, a rigid ring mounted on the plurality of mounting posts for receiving the wafer and supporting the wafer above the substrate support member, and a plurality of support pins to raise the wafer above the ring.

j.  a substrate support member positioned in a processing chamber proximate a fluid distribution system, having an upper substrate support surface including a plurality of fluid dispensing apertures formed therein, in an apparatus for removing an edge bead from a substrate

k.  at least three capillary ring support posts radially positioned about a perimeter of the upper substrate support surface;

l.  an annular capillary ring rigidly mounted to the capillary ring support posts, the capillary ring having a planar upper surface;

m.  a plurality of gas apertures radially positioned about the support substrate support surface and being configured to generate a gas flow cushion sufficient to support a substrate, and at least one rinsing solution aperture positioned proximate a central portion of the substrate support member;

9

n.  at least one fluid dispensing aperture formed in an upper surface of the substrate support member, a plurality of gas dispensing apertures formed into the upper surface, a plurality support posts positioned along a perimeter of the substrate support member in an annular pattern, an annular capillary ring mounted to the support posts, a plurality of selectively actuated pin assemblies positioned along the perimeter of the substrate support member; and a plurality of gripper assemblies positioned along the perimeter of the substrate support member.

3.  Hans-Jurgen Kruwinus made inventive contributions to the subject matter claimed in the '701 patent including at least the following features:

a.  a rigid annular capillary ring mounted to the plurality of mounting posts, the rigid annular capillary ring having a substantially planar capillary surface when attached to the mounting posts;

b.  the use of a ceramic material for the capillary ring.

4.  Ramin Emami did not make inventive contributions to the subject matter claimed in the patents-in-suit.

5.  Plaintiffs have a property interest in the claims of the '701 and '996 patents such that Applied's filing for these patents constituted conversion.

6.  Applied's filing for the patents-in-suit without notice to SEZ breached the JDA.

7.  The patents-in-suit disclose SEZ Confidential Information as defined in the parties' Joint Development Agreement in violation of the Joint Development Agreement.

8.  The disclosures in the patents-in-suit include SEZ confidential trade secrets that were misappropriated by Applied's filing for the patents-in-suit.

9. SEZ caused to be filed on April 28, 1999 European Application No. 99108319.7 naming Kurt Langen as the sole inventor and published as EP 1 052 682.

10. On or about July 6, 2000 technical drawing CUK-150-03-06, embodied in Exhibit No. 27, depicting a capillary ring was completed by SEZ personnel.

11. On or about July 10, 2000 technical drawing CUK-150-03-EXB, Exhibit No. 28, depicting an exploded view of a capillary chuck was completed by SEZ personnel.

12. On or about July 10, 2000 technical drawing CUK-150-03-00B, Exhibit No. 29, depicting an assembled view of a capillary chuck was completed by SEZ personnel.

13. Technical drawing CUK-200-03-08A, Exhibit No. 25, depicts a capillary ring mounting post, referenced in the exploded and assembled views of the capillary chuck as #9. This drawing was completed by SEZ personnel in 1999.

14. Technical drawing CUK-200-03-06, Exhibit No. 23, depicts selectably engageable eccentric gripper pins for a capillary chuck, referenced as # 6 in the exploded and assembled views of the capillary chuck. This drawing was completed by SEZ personnel in 1999.

15. Technical drawing CUK-150-01-03B, Exhibit No. 26, depicts a gear ring for actuating eccentric gripper pins and is referenced as # 7 in the assembled and exploded view of the capillary chuck. This drawing was completed by SEZ personnel in 1999.

16. Hans-Jurgen Kruwinus and Michael West of SEZ met with at least Bang Nguyen of Applied on or about July 21, 2000 in Santa Clara, CA to discuss the possibility of SEZ providing an OEM process module for cleaning, rinsing, and edge bead removal of semiconductor substrates and how such a module could be integrated into Applied's substrate electroplating system. This meeting constituted the first interaction between the

parties regarding what later became the joint development project involved in this dispute.

17. On or about September 4-8, 2000 representatives for the parties met in Sanata Clara, CA including Franz Kumnig (SEZ), Harry Sax (SEZ), Rainer Obweger (SEZ), Michael West (SEZ), Atif Malik (Applied), Bang Nguyen (AMAT), and Eugene Rabinovich (AMAT). At the meeting Applied defined its process specifications for the contemplated SEZ OEM module.

18. On or about September 28, 2000 Philip Engesser made invention disclosure Exhibit No. 56 to SEZ patent counsel Gerhard Kontrus.

19. On or about September 29, 2000 SEZ personnel completed technical drawing Exhibit No. 30, depicting two concentrically arranged annular pluralities of gas nozzles for the top of the capillary chuck instead of a single annular gas nozzle.

20. On or about October 23-25, 2000 representatives from both parties including Hans-Jurgen Kruwinus (SEZ), Harry Sax (SEZ), Franz Kumnig (SEZ), Borjanka Ley (SEZ), Philipp Engesser (SEZ) Rainer Obweger (SEZ), Donald Olgado (Applied), Jennifer Tseng (Applied), and Eugene Rabinovich (Applied) met in Villach, Austria. At the meeting the parties reviewed the process specifications, and facilities requirements of the contemplated process module. SEZ demonstrated to Applied a functional prototype of the capillary chuck in SEZ's lab. SEZ handed over a CD-ROM containing manuals, facilities requirements, flow charts, and drawings for the process module and associated equipment. No technical details of the capillary chuck were disclosed to Applied at this meeting.

21. SEZ caused to be filed on October 31, European Application No. 00123714.8 naming Philipp Engesser as the inventor and published as EP 1 202 326.

22. Applied and SEZ executed a Joint Development Agreement effective as of November 15, 2000 and running to April 30, 2001. On or about April 29, 2001 Applied and SEZ executed an Addendum to the November 15, 2000 JDA which extended the effective period of the JDA to July 31, 2001.

23. On or about Novemebr 16, 2000 SEZ personnel completed Technical drawing SGT-200-03-02, Exhibit No. 31, depicting an improved part # 12 of the capillary chuck with two concentrically arranged annular pluralities of gas nozzles instead of a single annular gas nozzle.

24. On or about December 4-14, 2000, Ramin Emami was in Villach, Austria at SEZ's laboratory in close collaboration with Harry Sax, Philipp Engesser, and Rainer Obweger of SEZ. The visit focused on evaluating the functionality and capability of SEZ's custom designed capillary chuck and on optimizing integration with Applied's components. During this visit, the capillary chuck with all details as shown in the above mentioned technical drawings was shown to Ramin Emami and Mr. Emami observed the operation and assembly of the chuck.

25. On or about December 18, 2000 to January 30, 2000 SEZ shipped several items to Applied's Sanata Clara location including:

    i.  two process modules each included a capillary chuck and the associated hardware such as the process chamber in which the chuck sets, the bearing/elevating unit on top of which the chuck sets, and the medium dispenser which dispenses fluids onto the chuck;

ii.   equipment associated with the process modules such as chemistry and gas
processing modules, a laptop computer to control the tool, installation
material, manuals, and spare parts.

26. On or about February 6-11, 2001 Rainer Obweger from SEZ visited Applied's Santa
Clara location to assist in with the integration and set up of SEZ's process modules.

27. On or about February 15, 2001 SEZ personnel completed technical drawing SGT-200-03-
00, Exhibit No. 32, depicting an exploded view of a capillary chuck with improved part
#12 having two concentric rings of a plurality of gas nozzles.

28. From March 12, 2001 to March 23, 2001 Ramin Emami visited SEZ's lab in Villach,
Austria and met with Harry Sax and Philipp Engesser to evaluate and optimize the SEZ
capillary chuck developed for use in the Applied electroplating system.

29. On or about August 10, 2001 the joint development project between the parties was
canceled.

30. On October 16, 2001, Applied, as assignee, caused to be filed patent application Nos.
09/981,589 and 09/978,865, naming only Ramin Emami as inventor, which matured into
the patents-in-suit.

31. Kurt Langen had invented and applied for patent on a version of a capillary ring system
prior to the parties making any communications which initiated or developed into the
joint development project which is involved in this dispute.

32. In response to meetings between the parties in California in July 2000, SEZ developed a
tool and method for etching residual metal from the backside, bevels, edge, and short
defined front-side area of semiconductor wafers after electroplating.  SEZ's tool utilized a
capillary ring to achieve the short defined front-side area etching.

33. The parties engaged in a joint development project which was intended to assess the operation and functionality of SEZ's custom designed capillary ring tool in Applied's electroplating system and the feasibility of integrating SEZ's tool into Applied's electroplating system.

34. The JDA of November 15, 2000 defines the property rights of the parties relating to intellectual property that may have arisen as a result of activities pursuant to the joint development project as of November 15, 2000.

35. Throughout the joint development project, confidential and proprietary information of SEZ was disclosed to Ramin Emami and Applied.

36. Ramin Emami visited SEZ's Austria location in December 2000 and March 2001 to observe SEZ's progress in adopting its capillary chuck to be compatable with Applied's requirements.

37. The capillary chuck which Ramin Emami worked with at SEZ's lab in Austria on both his December 2000 and his March 2001 trips was identical in all material respects to the technical drawings/trial exhibits cited in the jointly submitted chronology above as well as to Exhibit No. 1.

38. The capillary chucks shipped to Applied in January 2001 were identical in all material respects to the technical drawings/trial exhibits cited above in the jointly submitted chronology as well as to Exhibit No. 1.

39. Ramin Emami had not invented a rigid capillary ring as of his arrival in Villach in March of 2001.

40. Ramin Emami, Harry Sax, and Philipp Engesser, during their collaborative evaluation and optimization of SEZ's capillary ring system at SEZ's facility in March 2001, jointly

discussed that variation in ring mounting procedure could affect the system's performance.

41. Ramin Emami's claim of the invention of a rigid capillary ring did not occur until after the joint discussions noted above.

42. Plaintiff Exhibit No. 90 establishes that SEZ personnel were attempting to source a ceramic capillary ring by at least March 13, 2001.

43. Plaintiff Exhibit Nos. 91 and 92 establish that SEZ personnel were attempting to source a ceramic capillary ring prior to March 16, 2001.

44. All knowledge, know-how, apparatus, technical solutions, and data in SEZ's possession as of November 15, 2000 relating to capillary ring systems in general and SEZ's custom designed tool specifically was confidential and trade secret, except for that subject matter and know-how disclosed in EP 1 052 682, Kurt Langen's European patent application.

45. Applied represented to SEZ through both its counsel and its Fed. R. Civ. P. 30(b)(6) witness at deposition upon oral testimony, that Applied has not and does not currently plan on commercializing the subject matter of the claims of the patents-in-suit, including selling, offering for sale, or importing such the subject matter claimed in the patents-in-suit.

46. SEZ acknowledges that it is not making present claim for monetary damages based solely on, and dependant upon, Applied's representations that it has not sold, offered for sale, imported, or used in any way the subject matter of the claims of the patents-in-suit,.

47. Article 3.5 of the parties' JDA provides in part that each party acknowledges and agrees that any breach of the JDA causes irreparable injury to the other party and that the other party shall be entitled to such equitable or injunctive relief to prevent or limit such breach

16

or threatened breach as may be deemed proper by a court of competent jurisdiction, and the parties.

48. The JDA by Article 3.1 provides that "Confidential Information" means all non-public, proprietary information, deliverables, SEZ documentation, Applied documentation and intellectual property disclosed in the course of the activity by either party pursuant to the JDA whether disclosed in oral, written, graphic, machine recognizable, model, or sample form or any derivation thereof, and includes, without limitation, information deliverable by visual inspection of the SEZ system, Alpha version, and Applied ECP system. This paragraph also provides that the parties shall hold each others' Confidential Information in accordance with Article 3.3 of the JDA.

49. Article 3.3 of the JDA provides in part that the recipient of Confidential Information shall not disclose such Confidential Information other than to its employees and consultants on a need to know basis.

50. Article 2.4 of the JDA requires that each party notify the other in the event such party intends to file a patent application in Jointly Owned Developed IP as defined in the JDA.

51. Plaintiff SEZ Holding AG is a corporation organized under the laws of Switzerland with its principal place of business in Zurich, Switzerland. Plaintiff SEZ AG is a subsidiary of SEZ Holding AG and a corporation organized under the laws of Austria with its principal place of business located in Villach, Austria.

B.     **Applied's Statement:**

1.  Whether SEZ has shown by clear and convincing evidence, including the required

    corroboration by documents or testimony of uninterested witnesses, that:

    (i) Kurt Langen and Phillip Engesser jointly conceived of the inventions claimed in the

    patents-in-suit before Mr. Emami; and

    (ii) subsequently communicated those inventions to Mr. Emami.

2.  Whether SEZ has shown by properly corroborated clear and convincing evidence that

    Ramin Emami did not conceive of the inventions claimed in the patents-in-suit.

3.  Whether SEZ has shown by properly corroborated clear and convincing evidence that its

    personnel, and not Mr. Emami, were the true inventors of the inventions claimed in the

    '701 and '996 patents; ***and*** whether SEZ has shown by a preponderance of the evidence

    that Plaintiffs thereby have a property interest in the claims of the '701 and '996 patents

    such that Applied's filing for these patents constituted conversion of those intellectual

    property rights.

4.  Whether SEZ has shown by properly corroborated clear and convincing evidence that its

    personnel, and not Mr. Emami were the true inventors of the inventions set forth in the

    '701 and '996 patents such that they are SEZ's "Independent IP" or SEZ's "Developed

    IP", ***and*** whether SEZ has shown by a preponderance of the evidence that Applied's filing

    for the patents-in-suit breached the JDA by claiming or using SEZ's "Independent IP"

    and "Developed IP".

5.  Whether SEZ has shown by properly corroborated clear and convincing evidence that its

    personnel, and not Mr. Emami were the true inventors of the inventions set forth in the

    '701 and '996 patents such that they are SEZ's "Independent IP" or SEZ's "Developed

IP", **_and_** whether SEZ has shown by a preponderance of the evidence that the filing of applications that led to the '701 and '996 patents misappropriated SEZ's "Independent IP" and SEZ's "Developed IP".

6. Whether SEZ has shown by a preponderance of the evidence that it is entitled to any relief regarding its trade secret claim, despite:  (i) SEZ having suffered no damages; (ii) SEZ having been the first to publicly disclose any of the alleged trade secrets; and (iii) the information at issue not qualifying as trade secrets and/or not being included in Mr. Emami's patent applications.


**5)**    **Statement of issues of law to be litigated**

The parties agree that New York law should govern SEZ's conversion, misappropriation, and breach of contract claims.

**A.    SEZ's Statement Re Claim Construction Issues**:

SEZ timely offered its claim constructions which should be adopted by the Court. Applied did not offer proposed claim constructions as required by the Court's Scheduling Order of February 8, 2006.  Applied proffered an untimely claim construction that should be stricken.SEZ's claim constructions are attached hereto as Exhibit 1.

Thereafter Applied made additional untimely claim constructions on December 21, 2006 and December 29, 2006, which were inconsistent with its first untimely claim construction.

**B.    Applied's Statement Re Claim Construction Issues:**

In an effort to comply with the Court's order requiring the submission of a Joint Claim Construction Statement, attached hereto is a claim construction chart (Exhibit 2) that sets forth in

one document **both** of the parties' proposed constructions for the claim terms in dispute.  SEZ declined to join with Applied to present a "Joint" claim construction statement.

With regard to SEZ's complaint regarding the timing of Applied's proposed claim construction, Applied had understood that the parties' agreed-approach would be to first exchange identification of terms requiring construction, then meet and confer to discuss the parties' positions regarding claim construction in order to determine which terms actually needed to be presented to the Court in the joint claim construction statement to be submitted with the proposed pretrial order.  *See* Exhibit G (attached to Halkowski Declaration submitted in support of Applied's claim construction brief submitted concurrently with this proposed pretrial order).  When SEZ objected on November 9, 2006, to not having received Applied's proposed claim constructions, Applied acknowledged its misunderstanding of the approach the parties were to take (*id*.) and sent an email on November 10, 2006, (Ex. H to Halkowski Decl.) that:

> (i) provided Applied's proposed constructions regarding "rigid ring" and related phrases;

> (ii) advised SEZ of Applied's position that the terms "support pins" and "proximate" and related phrases did not require interpretation by the Court, but that the parties should meet and confer to attempt to resolve that issue; and

> (iii) requested that the parties meet and confer in order to arrive at the joint claim construction statement for submission to the Court.

In order to meet and confer, Applied followed-up its November 10, 2006 email with multiple phone calls and emails to SEZ, but SEZ has refused to engage Applied on the merits.  Instead, SEZ has argued that Applied has waived its right to any claim construction.  By December 29, 2006, when it became clear that SEZ would not meet and confer regarding whether it was actually necessary for the Court to construe the terms "proximate", "support pins"

and related limitations, Applied forwarded proposed constructions for these terms in response to SEZ's proposed constructions – consistent with Applied's prior objections to SEZ's effort to construe these terms. Applied continues to believe that construction of these terms is unnecessary.

**C.**    **SEZ's statement of issues of law to be litigated:**

SEZ is entitled to the relief is seeks for the counts encompassed in its complaint and counterclaim.

**D.**    **Applied's Statement of issues of law to be litigated:**

1.    Whether a claim for inventorship may succeed when the evidence adduced lacks the necessary clear and convincing proof, including the requisite corroboration via documents or testimony of uninterested witnesses.

2.    Whether a claim for trade secret misappropriation, breach of contract, or conversion may be maintained where the plaintiff stipulates that it has suffered no damage.

3.    Whether trade secret status may attach to information which the trade secret holder itself caused to be published and whether the complainant is entitled to any relief under such circumstances.

4.    Whether the alleged trade secret misappropriation and conversion claims are barred by the applicable statutes of limitations.

5.    Whether a claim for conversion of patent rights is preempted by Federal patent law.

**6)**    <u>**List of Exhibits**</u>

Attached hereto are Exhibit 3 (SEZ's list of trial exhibits, along with Applied's objections thereto), and Exhibit 4 (Applied's list of exhibits which may be offered at trial, along with SEZ's objections thereto).

**7)**    <u>**Names and addresses of witnesses to call at trial and specialties of experts**</u>

**A.** <u>**SEZ witnesses**</u>:

a.  Kurt Langen, Franz Pehrstrasse 13a, A-9500, Villach, Austria

b.  Philipp Engesser, Holdereggenstrasse 6, D-88131, Lindau, Germany

c.  Harry Sax, Unterer Heidenweg 2, A 9500 Villach, Austria

d.  Rainer Obweger, 9753 Lind im Drantal 198, Austria

e.  Hans-Juergen Kruwinus, Lobisserweg 15, A-9551 Bodensdorf, Austria

f.  Ramin Emami, 1809 Dalton Place, San Jose, California 95124

g.  Jennifer Tseng, 12471 Desanka Avenue, Saratoga, California 95070

h.  Donald Olgado, 831 Melville Avenue, Palo Alto, California 94306

i.  Son T. Nguyen, 3032 Dow Drive, San Jose, California 95135

j.  Girish Dixit, 3258 Reserve Court, San Jose, California 95135

k.  Michael Yang, 793 Cereza Drive, Palo Alto, California 94306

l.  SEZ further states that neither party designated an expert witness on issues for which it had the burden of proof.  Applied has indicated that it will attempt to present an expert witness who will rebut SEZ's case as a whole.  Such testimony cannot possibly qualify as testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph

(2)(B) [identified in the initial submission of an expert report]."  Fed. R. Civ. Pro.

26(a)(2)(C).  SEZ has moved to preclude Applied from introducing such

testimony.

**B.  Applied's Witnesses**:

    a.  Girish Dixit, 3258 Reserve Court, San Jose, California 95135

    b.  Ramin Emami, 1809 Dalton Place, San Jose, California 95124

    c.  Son Nguyen, 3032 Dow Drive, San Jose, California 95135

    d.  Donald Olgado, 831 Melville Avenue, Palo Alto, California 94306

    e.  Jennifer Tseng, 12471 Desanka Avenue, Saratoga, California 95070

    f.  Michael Yang, 793 Cereza Drive, Palo Alto, California 94306

    g.  Phillip Engesser, Holdereggenstrasse 6, D-88131, Lindau, Germany

    h.  Hans-Juergen Kruwinus, Lobisserweg 15, A-9551 Bodensdorf, Austria

    i.  Kurt Langen, Franz Pehrstrasse 13a, A-9500, Villach, Austria

    j.  Rainer Obweger, 9753 Lind im Drantal 198, Austria

    k.  Harry Sax, Unterer Heidenweg 2, A 9500 Villach, Austria

    l.  Dean P. Neikirk, Ph.D. (Expert Witness), University of Texas at Austin, 10110

       Burnet Road, JJ Pickle Research Campus, Building 160/MEER 1.108, Mail Code

       R9900, Austin, TX 78758:  Dr. Neikirk holds a Ph.D. in applied physics from the

       California Institute of Technology (1984) and is currently a Professor and

       Associate Department Chairman of the Department of Electrical and Computer

       Engineering at The University of Texas as Austin.  He has extensive experience in

       the field of semiconductor device fabrication, as well as other fields related to the

       technology at issue in this matter.

In response to SEZ's statement above, Applied notes that SEZ's motion to preclude Dr. Neikirk's testimony is based on the flawed assertion that his testimony was not properly disclosed.  As set forth in Applied's opposition to SEZ's motion (D.I. 44): (i) SEZ bears the burden on all issues to be presented at trial and SEZ fails to identify any case law to the contrary; (ii) SEZ chose not to submit any expert reports to address any of the issues on which it bears the burden of proof; (iii) conversely, Applied chose to engage Dr. Neikirk to rebut the asserted claims and facts alleged by SEZ in this matter; and (iv) Applied's expert report was then properly filed by the deadline set forth in this Court's scheduling order for rebuttal expert reports.  Moreover, Applied respectfully submits that Dr. Neikirk's testimony would be helpful to the trier of fact.

**8)    Statement of what SEZ's intends to provide in support of its claims**

SEZ intends to prove that Applied secretly applied for and obtained two patents which incorporate inventions made by SEZ employees which were disclosed to Applied in confidence pursuant to a Joint Development Agreement.  The purported inventor as named in the applications was Ramin Emami, who was not the inventor, and the applicantions were assigned to Applied as sole owner.  The patents have become public thereby converting and misappropriating SEZ trade secrets and proprietary information and breaching the Joint Development Agreement.  The concealed filing of the patent applications indisputably breached the prior notice provision of the JDA and impeded SEZ's ability to take action to defend its rights.

SEZ intents to provide the following in support its claims:

1. Trial testimony of SEZ's witnesses;

2.  the parties' Joint Development Agreement;

3.  Excerpts from the parties' discovery responses;

4.  Excerpts from the deposition testimony of Applied's and SEZ's witnesses;

5.  Physical evidence including a capillary chuck with a capillary ring and a shaft for a capillary chuck;

6.  The patents-in-suit and their prosecution histories;

7.  European Application No. 99108319.7, naming Kurt Langen as the sole inventor and published as EP 1 052 682, and translation thereof;

8.  European Application No. 00123714.8 naming Philipp Engesser as the only inventor and published as EP 1 202 326, and translation thereof;

9.  Various emails, faxes, and other correspondence, presentations, laboratory notes and data, schematics, photographs, and other documents included in SEZ trial exhibits as necessary.

**9)      Statement of what Applied intends to present regarding its defenses**

Applied will show that Mr. Emami was the first to conceive, describe, and claim the improved tool for cleaning wafers set forth in the patents-in-suit. Conversely, SEZ will fall far short of providing the clear and convincing evidence required for changing the inventorship of the two patents-in-suit. For example, SEZ does not even have the necessary corroboration via documents or testimony of uninterested witnesses that: (i) its personnel were the first to conceive of the claimed inventions (i.e., the improved cleaning tool conceived by Mr. Emami); and (ii) that the SEZ personnel then communicated those inventions to Mr. Emami.

To support its defenses, Applied intends to present the following:

a.  Evidence and argument regarding why SEZ's proof fails to establish the elements
of each of its four claims with the requisite level of proof;

b.  Evidence and argument that SEZ's misappropriation and conversion claims are
barred by the statute of limitations;

c.  Evidence and argument that SEZ's conversion claim is barred by the doctrine of
preemption;

d.  Evidence and argument that SEZ's trade secret, breach of contract and conversion
claims lack merit due to the absence of any damages;

e.  The '701 and '996 Patents

f.  Testimony from Applied's witnesses

g.  Excerpts from SEZ's discovery responses;

h.  Excerpts from the deposition testimony of SEZ's witnesses;

i.  As necessary, various documents set forth on Applied's and/or SEZ's list of trial
exhibits.

**10)**    **Proposed amendments to the pleadings**

**A.**    **SEZ's Statement:**  SEZ moved the Court on October 23, 2006 for leave to file
amended pleadings.  Underlined and bracketed versions of the proposed amendments were
submitted with the motion.  SEZ's proposed amendments add the assertion of Hans-Juergen
Kruwinus as an inventor of the '996 patent and the assertion of joint inventorship for the SEZ
personnel with Ramin Emami in the alternative to SEZ's primary claim the patents-in-suit
were invented solely by SEZ personnel.  The amendments also assert breach of the JDA for

failure to notify SEZ of the filing of the patents in suit in addition to the previous assertion of breach for filing of the patents in suit.

      **B.**    **Applied's Statement:**  Applied has opposed the motion to amend the pleadings (see Answering Brief at D.I. 42) on the basis that: (a) no good cause exists for SEZ's delay in waiting to seek amendment of its complaint until after the close of fact discovery; (b) SEZ's proposed amendment would be futile, given the testimony of its own alleged employee inventors – each one of whom firmly denied the existence of any joint conception of the claimed inventions; and (c) granting leave amend and changing the fundamental basis of SEZ's position, after the close of fact discovery, would unfairly prejudice Applied.

**11)**    **Certification of settlement efforts**

      Settlement efforts by the parties in the fall of 2005 and in late summer 2006 failed. Settlement was again attempted in November 2006 with the assistance of Magistrate Judge Thynge.  These efforts also failed.

      This order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.

Dated:  January 4, 2007

Respectfully submitted,

OF COUNSEL:

Douglas V. Rigler
Andrew J. Patch
YOUNG & THOMPSON
745 South 23rd Street, Suite 200
Arlington, Virginia 22202
(703) 521-2297

/s/ Andrew A. Lundgren
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
John W. Shaw (No. 3362)
jshaw@ycst.com
Andrew A. Lundgren (No. 4429)
alundgren@ycst.com
YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
(302) 571-6600

*Attorneys for Plaintiffs SEZ Holding AG,
SEZ AG, Kurt Langen, and Philipp
Engesser*

OF COUNSEL:

FISH & RICHARDSON P.C.
Frank E. Scherkenbach
225 Franklin Street
Boston, MA  02110-2804
(617) 542-5070

Katherine Kelly Lutton
Limin Zheng
500 Arguello Street, Suite 500
Redwood City, CA  94063
(650) 839-5070

/s/ Thomas L. Halkowski
FISH & RICHARDSON P.C.
Thomas L. Halkowski (No. 4099)
halkowski@fr.com
919 N. Market Street, Suite 1100
Wilmington, DE  19899-1114

*Attorneys for Defendant
Applied Materials, Inc.*

SO ORDERED this _____ day

of _____, 2006

_____
United States District Judge

28